Good morning. May it please the court. Fundamental due process requires that the agency state the reasons for a proposed adverse action in sufficient detail to allow the employee to make an informed reply. As you see, the charge itself and the information below it, which would normally be termed as specifications, contain no dates, times, or places. But we've dealt with that problem before, haven't we? In Lewis v. Agriculture. In Lewis, yes. Although Lewis... While Lewis is a non-presidential opinion and we're not bound by it, the reasoning of Lewis is rather hard to disagree with, and I don't understand why the reasoning in Lewis doesn't fit square to your case in terms of the kind of accusation that was being brought against your client, which was over a period of time and a series of involvements, he acted in a way that was not acceptable to the service. True. There are a couple of things. First, in Lewis, there was a description of the particular nature of the conduct in each of the specifications. In addition, there were affidavits submitted that contained details regarding the inappropriate conduct. In this situation, those details are missing. Moreover, in our case, we're not talking about someone making racially inappropriate remarks and dropping them into each conversation. Here we're talking about a series of very, very different acts that are involved. In fact, the cases have held that where information is available, that information should be provided. In this case, we have only those general statements, and if you look at the... Yes, but those sworn written statements contain very, very limited information. They have very general statements. They speak of harassment, intimidation, threats, bickering. They say he causes stress, he fights with people, he butts heads, his negative outlook. But again, none of those have dates, times, places, or specific instances. Here, essentially, he was kind of voted off the island, as it were, with people saying, you've done all kinds of terrible things. And if you look at the arbitration report, the arbitration decision, the arbitration decision was given raised judicata effect, or collateral estoppel effect, actually, as to the findings as to what happened. And if you look at the record at page 161, starting in the last sentence, or the last line, that's the guts of the findings against Milligan. And if you look at each of what I numbered nine separate incidents that are referred to specifically, each of those is a specific incident to which testimony was given at the arbitration hearing. Information similar to Lewis, as much information was available to enable someone to make an informed response. And that information was not provided, neither the notice of proposed removal, nor the attached investigative report, which was really a compilation of these very general affidavits, contained- But that was oral testimony during the arbitration proceedings, was it not? Correct. But those were the- Was it subject to cross-examination? Sure. Did you cross-examine the witness? I was not representing him at that time. Was the witness cross-examined? Sure. To your knowledge. Sure. So at that point in time, couldn't the specificity of the allegations be brought out for the record? Not in compliance with due process. Due process would require that prior to the commencement of the hearing, that an employee be given enough information to make an informed response. The cases have held, and there are numerous MSPB cases that have held, that an employee is entitled to know going in what the charges are, and not to have the charges developed for the first time during the hearing. Well, you don't need to develop the charges during the hearing. You can develop the defense during the hearing, can you not, if you have the right to cross-examine the witnesses? Not consistently with due process. In other words, due process requires notice in advance of the hearing. So what was the notice that was provided to Mr. Milligan in advance of the hearing? Virtually none. Wasn't he given the notice with specific charges that were made with respect to the witnesses, it would be called? I would take exception to the word specific. I guess if you wanted the term specific to the point where time and content was defined with respect to each one of the allegations, by whom, when, he was struck in the head every single time, or butted, or whatever it was, as long as he knew that the person was alleging that Mr. Milligan butted him or her on the head several times, wasn't that sufficient notice? First of all, I believe that butting heads was an oral rather than a physical butting of heads. I think it meant only a confrontation. But isn't that sufficient to at least give people the indication as to what the allegations would be at the hearing? Absolutely not. I mean, you're talking about an unknown time period of, say, four or five years, and you have all of the employees with whom he worked saying there were a whole lot of incidents. But what incidents are we talking about? Now, when it came to the arbitration, they were able to identify specifically the 11, at least what I counted here is nine separate incidents where he said this, or he said that, or he did this, or he did that. And none of that conduct is specifically described in the charges and specifications against him. Well, it's not like this was a whole new problem for him, is it? Weren't there earlier charges and earlier investigation in his case? Approximately five years before a charge had been made against him, and that was withdrawn and a general letter was signed that saying both sides agreed that everybody would treat each other nicely from then on. And that was five years before. So he had some idea of what the nature of this problem was, would you think? He may have had an idea of the general nature of the problem, but such is not the meaning of due process. I mean, in due process, he has a right to know what it is he's alleged to do so that he can develop a specific defense insofar as that's doable. Now, where a person can't identify a date, he may be able to identify a place or what was said. And that information is necessary in order to comply with the requirements of due process. Now, the other argument that I did want to touch on, at least briefly, is with respect to the application of the Douglas criteria. And while generally an agency is given broad discretion in the administration of its own affairs, the actions taken must be reasonable and they must represent a conscious application of those principles. And I would point out to the court that in the examination of the deciding official, first of all, the deciding official, Mr. Calvert, could not have known and did not know the nature of the charges because the charges themselves were so general and that he could not have had any indication as to what the specifics were that were being discussed. And this, of course, he admitted he had no other information. But when he was asked, starting at page 193, what went into the determination, he says it was the seriousness of the allegation. And then he's asked on page 194, did you look at anything in deciding his removal or do you remember looking at anything else in deciding his removal? Answer, off the top of my head, I can't remember. I probably checked his years of service. I don't remember specifically if five or six years ago. Is there any document that would refresh your recollection? Answer, not that I can think of. And then going on to page 196, did you consider any penalties other than removal when you went through your process of deciding what the penalty would be? Answer, I would be guessing. I don't remember. Now, if you apply all of the criteria, and I've gone through this in my brief, notwithstanding all of the claims that have been made of all of this so-called improper conduct, all of these years went by with no charges brought. When this was finally raised, the agency did not engage in any kind of progressive discipline. And in looking at each of the other criteria, his position was not a high-level position. This was not something that was normally known. There was significant testimony in the record as to the way in which these problems were generally handled. You're well into your rebuttal time. Do you want to save some time for rebuttal? Sure. All right. Why don't we do that? We'll restore three minutes of your rebuttal. Appreciate that. Thank you, Judge. May it please the Court. This Court is reviewing the decision of the MSPB, not the decision of the arbitrator. And the record of the MSPB is replete with specific reasons as to dates, times, places, what was said, and the creation of this totally hostile work environment by Mr. Milligan. I'd like to just give a few examples. At Joint Appendix 115, employee Mascara, a woman, testified that there was a pattern of pervasive, repeated sexual harassment in terms of words against her. And at one point, he said, you shut up and go eat another cheeseburger. He used profanity against her. She said in her sworn statement that Mr. Milligan was taken off the window because he was so rude to customers and there were complaints from the public. But there's no degree of specificity there, is there, as to the time and when it happened? Well, that falls. You're looking at 116. 115 and 116. She, hers, I believe, maybe did not have dates, but other statements did. At Appendix 78, a customer described an incident on February 1st of 2000 where he was trying to pay the rent for his postal box, and in front of the customers, Mr. Milligan went off on a tirade. And there were other examples where, at Appendix 79, But you pointed to 115 and 116. Yes, 115 and 116. And that particular affidavit has no dates on it, except for the date of the affidavit. I believe that's correct, because it was a pattern. It was continuous. It was repeated. It was pervasive. It was basically almost all the time. So there are no dates. You're not using that as an example of specificity of dates and times, just as a pattern? Of a pattern and as an example of specific comments that were made, quotation marks that were said by Mr. Milligan, and incidents where he didn't work the window because there were complaints from the public. You're saying that's the specificity of behavior, but not necessarily dates. Correct, the nature of the conduct. A date was given at Appendix 78 by Mr. Norcolan, who said on February 1st, 2000, Milligan shouted at me in this tirade in front of customers. So while not all the affidavits had dates, there were some examples of dates. At Appendix 109, an employee gave specifics that Mr. Milligan, petitioner, hid a tray of mail from her and she had to redo her route. So that's a specific example of the kind of harassment they were subject to. At Appendix 79, in terms of a place, Mr. Fogarty attested that when he was walking outside this building with petitioner, there was an outburst and petitioner yelled, I'm going to be your worst nightmare. The affidavit went in to say that petitioner went into a wild frenzy, the person stepped back, but petitioner stepped forward. So basically the investigative report that was done by an investigator and supervised by a crisis intervention officer provided a whole host of specifics as some had dates, some didn't, some had places, some didn't, some had what was said, some didn't. But the administrative judge, that was part of the record, and found and considered that in reaching the decision. I take it the removal in this case was not based on any particular incident at any particular time, but rather at a course of conduct, is that what we're to gather? Yes, it's a pattern of totally inappropriate conduct, and actually petitioner did not ultimately deny that he made some of these statements. Help me understand something about this case. It ran two parallel tracks, it ran an arbitrator's track and it ran a removal appeal to the MSPB appeal to us track, is that correct? So the arbitrator's track is really not part of this case, is it? That's correct. The veterans preference eligible employee of the postal service under this court's Mays decision can go both ways, or sequentially, which would happen in this case. As I understand it, the removal decision by the agency was upheld by the board, is that correct? Yes, the board sustained the removal. So that, assuming that board decision remains in effect, he was removed as of the date of the agency's action? Correct. Does that imply that the government has a cause of action against him for the salary that was paid to him during the following two years because of the arbitrator's decision? How do these two mesh? Well... The arbitrator gave him two more years of work before he retired, but the board's decision or the agency's decision to remove him... Moved him as of a certain date. ...would be effective presumably as of that date. Would that trump the arbitrator's decision at this point? Well, if the court sustains the removal, the removal is a maximum reasonable penalty and that would go in effect as of the effective date of removal. Which therefore would mean that the later two years of money that was paid to him by the government, the government has a cause of action. Well, it's not clear whether the government would or if it did would even pursue it, but the court need not decide that in this case. I'm just curious as to how these two tracks, how you understand these two tracks to mesh. It's a very strange process. It's the way the system was set up and basically both parties are bound by both decisions. So if the court sustains the removal, then the removal is effective as of that date. If the court were to reverse the removal, the parties are still bound by the arbitrator's decision. Right, and he's now retired. Right. So what is at stake in this litigation? Well, it's not clear to us, but it appears that Petitioner is trying to, in going to the board, to get the arbitrator's award mitigated somehow or get some kind of effect. But he was suspended. The arbitrator's award is not before, is not involved in this case. That's absolutely correct. So, I mean, it's not clear to us exactly what Petitioner is looking for. It's up to him, but he does have the right to come to the court for review of the board decision. Well, the board decision, though, was an affirmance of the removal, right? Yes, we're asking the court to affirm the removal. Hypothetically, if we reverse that, is there an issue of back pay? Of the government? Of the arbitration decision? Oh, you mean of Petitioner recovery? No, because he's also bound by the arbitrator's decision. He was a 16-month suspension without pay, and he's not entitled to back pay for that 16 months. And then he was assigned for two years with pay. Reassigned to a different place. Right. With pay. With pay, he was assigned on a part-time flexible schedule. The arbitrator actually said that if she were not able to reassign him, she would have sustained the removal. But in any event, all that's before this court is whether to affirm the board's decision. Of removal. Of removal. A couple important points. Petitioner had abundant notice, as we've set out in the brief, and it's in the record, and an opportunity to be heard. But the administrative judge found, at addendum 15 and 16, that for strategic reasons, he chose not to do so at two points before the removal decision was effected. There was a pre-termination disciplinary interview where he basically was asked if he had anything to say, and he said not at this time. And there was an oral reply with the deciding official, and petitioner essentially said, I'll wait to the hearing. He never asked for any more details or anything else of that nature, but he had the notice of specifics and he had the opportunity to be heard before the removal decision was made, but chose for strategic reasons, as the administrative judge found as a factual matter, he chose not to exercise. With respect to the penalty issue, the removing official testified from pages 193 to 228 of the appendix, in detail about why he chose the penalty, and that was also explained in the notice and the decision to remove, that the misconduct was very serious. Progressive discipline was actually not required, and it was not appropriate because the misconduct was so serious and threatening. There was undisputed evidence that petitioner's harassment of the former postmaster basically drove the postmaster to the point of an emotional breakdown, and he left. That postmaster's affidavit said the employees were afraid of petitioner and afraid to put things in writing, so at some point after the postmaster was essentially driven out and the investigation began, the employees then did put their statements in writing. The deciding removing officials determined that there was no potential for rehabilitation because in 1996 petitioner had signed a settlement agreement of an earlier dispute that he would treat his supervisors and co-workers with dignity and respect, and clearly the facts in this case show that he did not do that. One of his arguments was this was taken because of his status as a union representative, but the AJ, administrative judge, found that not believable. But actually to the extent that petitioner argues he wasn't a supervisor, he was not a supervisor, but he had a measure of control over these employees as their union rep, and there's evidence in the record that he had filed grievances against some of his own co-workers. It had an impact on the agency because there was evidence from several affidavits that he was rude to customers, and as I said earlier, he was taken off the window because of complaints from the public. So while he did have a relatively long length of service, the deciding official took that into account and under the Douglas factors weighed it all and determined that in the balance, removal was the only option. At joint appendix 339 in the notice of proposed removal, the rationale was given that if he were left in the building within the confines of a small enclosed building with the other employees, it would have been an untenable situation given the hostile work environment. The deciding official testified that the hostile work environment is about as serious as you can get when it comes to the nature of the misconduct at issue. Thank you. Thank you very much. Mark, you have three minutes. Okay, I'll try to talk quickly. I think from what counsel has said, I think... I think we have that part of your argument. Help me understand what are the consequences to your client if the removal is affirmed and what are the consequences to your client if the removal is overturned? Sure. I think if the removal is overturned, I believe that he would be entitled to back pay that if... Under the arbitrator's ruling? Right. There were two separate proceedings and those two separate proceedings could come to two separate results. And as a result of either... If the removal is overturned, doesn't the arbitrator's decision then become binding? I believe that the decision that places the least restriction and limitation on the employee would be binding upon the agency.  No, well, if the removal is... If it's held that the removal is improper, then no action should have been taken against him. And in that case, he would be entitled to the back pay. But who elected to pursue the arbitration proceeding? Under the law, he has a right to... He has a right to do it. ...assault court two bites at the apple. So it's a parallel... Oh, your argument is the appeal to the arbitrator would be voided because the removal would be voided. Correct. I see. So he would be entitled to reinstatement up until the time he retired? Correct. Well, he would have voluntarily retired, so he wouldn't be reinstated, but he would be entitled to the back pay. Gotcha. For the two months? It wasn't a period of two months, it was a period of about 16 to 18 months. 16, 18 months. Yeah. But in listening to... On the other hand, if we affirm the removal, does he then have to give the money back to the government? Well, he worked during that time period, so there would be no question. I see. Okay. But counsel was pointing to specific quotes and specific things that were said. That's exactly the reason why he should have been given notice of what those things were. Moreover, the specific charges in this case relate to things that were said or done with respect to the seven individuals who were named. Counsel has said, look at the terrible things this man did, and referred to two other things. What he did with a customer, which was not within the scope of the charges, and his relationship with his former supervisor, the postmaster. And he was never brought up on charges for anything that he did with respect to the postmaster. He was very specifically excluded by the charges. So that what the arbitrator was dealing with, the arbitrator held a factual hearing. The MSPB relied upon those facts, and those would be under the doctrine of collateral estoppel, which was correct. However, the underlying proceeding was flawed, because he was never given his due process rights. And what was presented to the arbitrator, and which the arbitrator acted upon, and more importantly, for your purposes, what the MSPB acted upon, were things that were well beyond the scope of the charges. The charges were very limited. He may have been a bad person. He may have been a terrible employee. But due process protects bad people and bad employees. And they're supposed to give him sufficient notice, and the hearing is supposed to be based upon things within that notice. Mr. Schlager, you're repeating yourself. We have the case. Thank you very much. Thank you very much. Thank you. The case is submitted.